United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORETRONIC CORPORATION, et al.,<br>Plaintiffs,<br>v.<br>MAXELL, LTD,<br>Defendant. | Case No. 26-cv-00697-EKL<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART**<br><br>Re: Dkt. No. 19 |

This case arises from a dispute over a patent for projectors. Plaintiffs Coretronic Corporation ("Coretronic") and its wholly-owned subsidiary Optoma Technology, Inc. ("Optoma") seek declaratory judgments of non-infringement, invalidity, and unenforceability as to the asserted patent. Plaintiffs also contend that Defendant Maxell, Ltd. committed antitrust violations and engaged in unfair business practices by asserting the patent against them. Defendant moves to dismiss. Mot. to Dismiss, ECF No. 19 ("Mot."); Reply, ECF No. 33. The Court carefully reviewed the parties' briefs and relevant authority and heard argument on October 7, 2026. For the following reasons, the motion is GRANTED in part with leave to amend and DENIED in part.

## I. BACKGROUND

Coretronic, Optoma, and Maxell design and sell projectors. *See* First Am. Compl. ¶¶ 2-4, 31, ECF No. 12 ("Compl."); Mot. at 2-3. This action is part of a multi-year skirmish between the parties, Compl. ¶ 46, and focuses on U.S. Patent No. 8,075,142 ('142 Patent), a patent for an "image display apparatus for projecting an image on a screen."[1] '142 Patent col. 1 ll. 16-17.

[1] On July 9, 2024, Defendant sued Plaintiffs for patent infringement in the Eastern District of Texas. That litigation does not involve the '142 Patent. *See* Compl. ¶ 93, *Maxell, Ltd. v. Coretronic Corp.,* No. 5:24-cv-00088-RWS-JBB (E.D. Tex. July 9, 2024); *see also* Mot. at 4.

The parties first interacted in April 2023, when Defendant sent a letter to Plaintiffs contending that Plaintiffs' projectors were infringing "numerous" patents, including the '142 Patent. Mot. at 3-4. The Parties corresponded repeatedly until February 2024, during which time Plaintiffs allege that they "presented concrete evidence that the claims of many of [Defendant's] patents were not infringed . . . and/or were invalid over the prior art." Compl. ¶ 7; *see also* Mot. at 3-4.

In December 2025, Defendant informed non-party Amazon.com, Inc. ("Amazon") through Amazon's Patent Evaluation Express ("APEX") program that some of Plaintiffs' products sold on Amazon.com infringed the '142 Patent. Mot at 1. On January 14, 2026, Defendant provided Optoma with the list of products and the corresponding claim chart that it submitted as part of the APEX proceeding. *Id.* at 4. On January 22, 2026, Plaintiffs brought this action alleging that Defendant's actions amount to "bad faith" patent assertion. Plaintiffs assert six claims: (1) Declaratory judgment of non-infringement; (2) Declaratory judgment of invalidity; (3) Patent misuse; (4) *Walker Process* fraud under the Sherman Act, 15 U.S.C. § 2; (5) Tortious interference with prospective economic advantage under California common law; and (6) Unfair business practices and bad faith patent assertion under Washington law. Defendant now moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061,

United States District Court
Northern District of California

1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

## III. DISCUSSION

Defendant contends that dismissal is warranted because Plaintiffs fail to plead facts that plausibly demonstrate: (1) Plaintiffs' entitlement to a declaratory judgment of non-infringement, invalidity, or unenforceability as to the '142 Patent; or (2) Defendant's violation of federal or state laws governing anticompetitive behavior and unfair business practices. The Court addresses these arguments in turn.

### A. Plaintiffs' Declaratory Judgment Claims

#### 1. Declaratory Judgment of Non-Infringement

A plaintiff seeking a declaratory judgment of non-infringement must, as in other contexts, plead enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555); *see also Zoho Corp. Pvt. Ltd. v. Orion Labs Tech, LLC,* No. 25-cv-08727-VKD, 2026 WL 816229, at *7 (N.D. Cal. Mar. 24, 2026) (collecting cases).

Here, Plaintiffs plausibly state a claim for non-infringement of the '142 Patent. Plaintiffs contend that their projectors "do not project 'a portion of an image selectively fitted to' the screen . . . as required by the claims of the '142 Patent." Compl. ¶ 44 (citing '142 Patent col. 15 ll. 37-38). Plaintiffs' pleading is straightforward, and Defendant is aware of the specific reason – the lack of selective image-fitting – why Plaintiffs believe that their accused products do not infringe the '142 Patent. *See Zoho Corp. Pvt. Ltd.*, 2026 WL 816229, at *7 (denying motion to dismiss a declaratory judgment of non-infringement claim because the complaint went "beyond 'general denials' of infringement and identifie[d] at least one reason why" the "accused products do not infringe").

Defendant nonetheless contends that Plaintiffs' pleading is insufficient because it is conclusory and merely "quotes snippets of claim 1 of the '142 Patent." Mot. at 6. This argument is unavailing. Patent infringement "requires all claim limitations to be present" in the accused products. *Ajinomoto Co. v. ITC*, 597 F.3d 1267, 1274 (Fed. Cir. 2010). Therefore, Plaintiffs

sufficiently alleged non-infringement by identifying one specific claim limitation – the requirement that "a portion" of an image be "selectively fitted to" a screen – that is not practiced by the accused projectors. *See* '142 Patent col. 15 ll. 37-38. This allegation alerts Defendant to the entire basis of Plaintiffs' non-infringement argument. *See Ironworks Pats. LLC v. Samsung Elecs. Co.*, No. 17-cv-01958-HSG, 2018 WL 1400440, at *2 (N.D. Cal. Mar. 20, 2018) ("Though somewhat minimalist, Defendants' non-infringement counterclaims provided Plaintiff with enough detail to put them on notice of Defendants' non-infringement contentions. That is sufficient for Defendants' counterclaims to survive beyond the pleading stage.").

Accordingly, Defendant's motion is DENIED with respect to Plaintiffs' claim for declaratory judgment of non-infringement.

**2. Declaratory Judgment of Invalidity**

Plaintiffs contend that the '142 Patent is invalid on three independent grounds: anticipation, obviousness, and indefiniteness. Compl. ¶¶ 50-51; 35 U.S.C. §§ 102, 103, 112(f). Defendant argues that Plaintiffs have failed to sufficiently plead each basis.

**a. Anticipation (35 U.S.C. § 102)**

A plaintiff seeking a declaratory judgment can plausibly state a claim for invalidity by pleading a specific theory of invalidity and identifying the corresponding prior art. *See Dror v. Kenu, Inc.*, No. 19-cv-03043-LB, 2019 WL 5684520, at *11 (N.D. Cal. Nov. 1, 2019). Claimed subject matter is "'anticipated' when it is not new; that is, when it was previously known. Invalidation on this ground requires that every element and limitation of the claim was previously described in a single prior art reference, either expressly or inherently, so as to place a person of ordinary skill in possession of the invention." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008). "The way in which the elements are arranged or combined in the claim must itself be disclosed, either expressly or inherently, in an anticipatory reference." *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010).

Here, Plaintiffs plausibly allege that the '142 Patent is invalid on anticipation grounds because "one or more products that practice each and every limitation of at least the asserted claims of the '142 Patent was on the market, sold to and used by consumers, and publicly

disclosed in the United States prior to the effective filing date of the ’142 Patent.” Compl. ¶¶ 48, 50. Plaintiffs identify these products as “the Optoma-branded HD72 model and HD73 model projectors,” and Defendant’s own product, “the Hitachi-branded CP-A100 model series of projectors.” *Id.* ¶ 48. Thus, Plaintiffs alerted Defendant to the theory of invalidity (anticipation under 35 U.S.C. § 102) and the prior art (the three projector models) on which that theory relies. *See Dror*, 2019 WL 5684520, at *11 (finding that defendant was “on notice as to one of the main bases for [plaintiff’s] invalidity claims” because plaintiff alleged obviousness under 35 U.S.C. § 103 and identified five pieces of prior art); *see also Fitness Anywhere LLC v. Woss Enters. LLC,* No. 14-cv-01725-BLF, 2014 WL 4802432, at *2 (N.D. Cal. Sep. 26, 2014) (similar).

Defendant contends that Plaintiffs’ pleading is insufficient because it “does not map any feature of the prior art to any claim of the ’142 Patent.” Mot. at 8. Defendant also adds that “merely naming products is not the same as alleging invalidity with the specificity *Twombly* and *Iqbal* require.” Reply at 4. But Plaintiffs did more than just name products in the abstract – they named the specific products that allegedly anticipated the ’142 Patent under 35 U.S.C. § 102. That detail nudges their invalidity claim “across the line from conceivable to plausible.” *Twombly*, 550 U.S. at 547; *cf. J & K IP Assets, LLC v. Armaspec, Inc.,* No. 3:17-cv-07308-WHO, 2018 WL 3428757, at *2-3 (N.D. Cal. July 16, 2018) (dismissing a declaratory judgment claim for invalidity under 35 U.S.C. § 102 because the complaint “fail[ed] to include any allegations identifying prior art”).

Accordingly, Defendant’s motion to dismiss Plaintiffs’ invalidity claim on anticipation grounds under 35 U.S.C. § 102 is DENIED.

**b. Obviousness (35 U.S.C. § 103)**

A patent claim is invalid for obviousness “if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.” 35 U.S.C. § 103. The existence of disparate pieces of prior art is not enough – the person of ordinary skill in the art must have some “motivation to combine prior art references to arrive at the claimed invention.” *Natera, Inc. v. NeoGenomics*

*Labs., Inc.*, 106 F.4th 1369, 1376 (Fed. Cir. 2024). The party challenging the patent's validity "must show a reason why a skilled artisan would have made the combination." *Id.*; *see also KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 417-18 (2007).

Here, because Plaintiffs plausibly allege invalidity based on anticipation as summarized above, they also plausibly allege invalidity based on obviousness. *See supra* Section III.A.2.a. "[A] disclosure that anticipates under § 102 also renders the claim invalid under § 103, for 'anticipation is the epitome of obviousness.'" *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983) (citation modified). Accordingly, Defendant's motion to dismiss Plaintiffs' invalidity claim on obviousness grounds under 35 U.S.C. § 103 is DENIED.

**c. Indefiniteness (35 U.S.C. § 112(f))**

By contrast, Plaintiffs' claim for invalidity on indefiniteness grounds pursuant to 35 U.S.C. § 112(f) is insufficient. Section 112(f) governs so-called "means-plus-function" claims. It permits a patent applicant to express claims using general language – a "means or step for performing a specified function" – so long as the patent specification discloses the "structure" or "material" in the invention that actually performs the claimed function. 35 U.S.C. § 112(f). A patent claim that fails to do so is invalid for indefiniteness. *See Tobii Tech. AB v. Eye Tribe APS*, No. C 13-05877-SBA, 2016 WL 269890, at *3 (N.D. Cal. Jan. 22, 2016) ("[A] means-plus-function clause is indefinite if no corresponding structure appears in the specification." (citing *Noah Sys., Inc. v. Intuit Inc*., 675 F.3d 1302, 1313 (Fed. Cir. 2012)).

Here, Plaintiffs allege that "at least the asserted claims of the '142 Patent include one or more elements governed by 35 U.S.C. § 112(f) but the specification of the '142 Patent fails to disclose a corresponding structure." Compl. ¶ 51. However, the complaint does not identify the specific limitation(s) in the '142 Patent on which this indefiniteness challenge is based. Without that information, Plaintiffs' pleading is little more than a recitation of 35 U.S.C. § 112(f) itself. *See J & K IP Assets, LLC*, 2018 WL 3428757, at *2-3 (dismissing declaratory judgment counterclaims that included only conclusory allegations).

Plaintiffs contend that "showing how claim limitations are . . . invalid under 35 U.S.C. § 112(f) is simply not required" at the pleading stage because Patent Local Rule 3-5 sets forth the

United States District Court
Northern District of California

framework for a plaintiff to disclose invalidity contentions in declaratory judgment cases. Opp. at 11, ECF No. 39. But Patent Local Rules 3-5's procedure for disclosing more detailed information *later* does not excuse Plaintiffs from meeting the threshold requirement to plausibly state a claim *now*. *See Bot M8 LLC v. Sony Corp. of Am*., 4 F.4th 1342, 1355 (Fed. Cir. 2021) (affirming dismissal of patent infringement claim because reciting elements and offering conclusions "without supporting factual allegations" was "insufficient to satisfy the *Iqbal*/*Twombly* standard"); *see also Big Baboon, Inc. v. SAP Am., Inc.,* No. 17-cv-02082-HSG, 2018 WL 4096396, at *1 (N.D. Cal. Aug. 28, 2018) ("[T]he pleading standard articulated in *Twombly* and *Iqbal* appl[ies] in the patent context."). In any event, it makes little sense to relieve Plaintiffs from plausibly alleging the basis of their indefiniteness challenge because indefiniteness is based on the language of the patent itself. *See Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 901 (2014) ("[A] patent is invalid for indefiniteness if *its claims*, read in light of the *specification* . . . fail to inform . . . about the scope of the invention." (emphasis added)). Therefore, Plaintiffs have the information they need to add the requisite detail to their complaint.

Accordingly, Defendant's motion to dismiss Plaintiffs' invalidity claim on indefiniteness grounds under 35 U.S.C. § 112(f) is GRANTED.

### 3. Patent Misuse

Plaintiffs also fail to plausibly state a claim for a declaratory judgment of patent misuse. A plaintiff seeking a declaratory judgment of patent misuse based on a defendant's allegedly improper assertion of a patent "must provide some factual basis for the allegation that [the defendant] knew the patent was invalid or unenforceable" at the time of enforcement. *Advanced Cardiovascular Sys., Inc. v. Scimed Sys., Inc*., No. C-96-0950 DLJ, 1996 WL 467277, at *4 (N.D. Cal. July 24, 1996). A plaintiff must also "state how [a defendant] has attempted to overbroadly and impermissibly construe its patent such as to cause an anticompetitive effect." *Id.*

Here, Plaintiffs allege that Defendant is "impermissibly broaden[ing] the physical or temporal scope of the patent grant with anticompetitive effect" because Defendant "sought to prevent the sale" of Plaintiffs' projectors despite "knowing that the claims of the '142 Patent were not and are not infringed by the Optoma-branded projectors." Compl. ¶¶ 55, 57 (internal

United States District Court
Northern District of California

quotation marks omitted). In support of this theory, Plaintiffs allege that Defendant "sought to prevent the sale" of Plaintiffs' projectors by reporting them as "infringing" to Amazon in early January 2026. *Id.* ¶¶ 10-11. Plaintiffs also allege that they sent multiple letters and emails to Defendant that demonstrated the invalidity of the '142 Patent and "undermined [Defendant's] allegations of infringement." *See id.* ¶¶ 6-8, 19-22.

As an initial matter, Congress has exempted certain practices from liability for patent misuse. *See* 35 U.S.C. § 271(d). A patent owner cannot be "deemed guilty of misuse or illegal extension of the patent right" solely because he "sought to enforce his patent rights against infringement," as Defendant appears to have done by initiating Amazon's internal patent evaluation proceeding. *Id.* § 271(d)(3); *see also* Compl. ¶ 10. Plaintiffs' theory of misuse thus hinges on their contention that Defendant notified Amazon despite *knowing* that the '142 Patent was invalid and not infringed. But Plaintiffs' belief in those contentions does not necessarily make them true, and the mere fact that Defendant declined to concede non-infringement or invalidity upon learning of Plaintiffs' position does not amount to "knowledge" of invalidity. *See Parallax Grp. Int'l, LLC v. Greatmats.com Corp.,* No. SACV 16-00927-CJC(DFMX), 2017 WL 3453297, at *3 (C.D. Cal. Jan. 11, 2017) ("That [defendant] disagrees with [plaintiff's] interpretation of its patents . . . is insufficient for purposes of pleading patent misuse."); *see also Hon Hai Precision Indus. Co. v. Wi-LAN, Inc.*, No. 12 Civ. 7900 SAS, 2013 WL 2322675, at *10 (S.D.N.Y. May 28, 2013) ("If allegations that a patentee sent a notice of infringement related to a non-infringing product stated a claim for patent misuse, then every successful defense of noninfringement would necessarily result in a finding that a patent was unenforceable due to patent misuse."). Moreover, because an issued patent is "cloaked in a presumption of validity," actions to enforce a patent are "presumed to be brought in good faith." *Atari Games Corp. v. Nintendo of Am., Inc*., 897 F.2d 1572, 1577 (Fed. Cir. 1990). In light of these principles, the Court cannot plausibly infer from Plaintiffs' threadbare allegations that Defendant is misusing the '142 Patent. *See Parallax Grp. Int'l, LLC*, 2017 WL 3453297, at *3 (dismissing a declaratory judgment claim of patent misuse for "conclusory" assertion, based only on the plaintiff's belief, that the defendant knew the plaintiff's products were non-infringing).

United States District Court
Northern District of California

Accordingly, Defendant's motion to dismiss is GRANTED with respect to Plaintiffs' claim for declaratory judgment of patent misuse.[2]

**B. Plaintiffs' Antitrust and Unfair Business Practices Claims**

Plaintiffs next seek relief under federal and state laws regulating anticompetitive conduct: Section 2 of the Sherman Act, California common law, and two Washington statutes governing unfair competition and bad faith patent assertion. The Court will address each of these claims individually, but turns first to a brief discussion of *Noerr-Pennington* immunity.

**1. *Noerr-Pennington* Immunity**

The *Noerr-Pennington* doctrine immunizes "those who petition any department of the government for redress." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). Litigation activity – including activity "incidental" to litigation – is generally immune from antitrust liability. *See Prof'l Real Est. Inv., Inc. v. Columbia Pictures, Inc.*, 508 U.S. 49, 60 (1993) ("*PRE*"); *see also Sosa,* 437 F.3d at 925-26, 942 (affirming dismissal of claim because sending "tens of thousands of demand letters" was protected *Noerr-Pennington* conduct). Many courts have construed *Noerr-Pennington* immunity broadly, applying it to a variety of state law claims, including those that Plaintiffs bring here. *See, e.g.*, *Kottle v. Nw. Kidney Ctrs*., 146 F.3d 1056, 1059 (9th Cir. 1998) ("[T]he *Noerr-Pennington* doctrine sweeps broadly and is implicated by both state and federal antitrust claims[.]"); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,* Nos. C 04-2000 CW, C 06-2929 CW, 2007 WL 801886, at *4 (N.D. Cal. Mar. 14, 2007) ("While the *Noerr-Pennington* doctrine was formulated in the context of antitrust cases, it has been extended to cases involving other types of civil liability, including state law claims of unfair competition.").

[2] Defendant also argues that this claim is improperly styled as one for "Patent Misuse" instead of "Declaratory Judgment of Patent Misuse," and patent misuse is "not a standalone cause of action." Mot. at 2, 9. Plaintiffs can address the clerical error when amending the complaint. With respect to Defendant's broader argument, it is true that patent misuse is typically raised as an affirmative defense in patent infringement cases. *See Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986). However, this does not preclude a declaratory judgment plaintiff from raising patent misuse if a case or controversy exists with respect to patent infringement. The only relief available for a successful patent misuse claim is a declaration rendering the patent unenforceable. *See B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1428 (Fed. Cir. 1997).

United States District Court
Northern District of California

However, a party cannot claim the protection of *Noerr-Pennington* immunity if it (1) engages in "sham litigation" or (2) commits *Walker Process* fraud by fraudulently obtaining a patent and using it to "exclude a competitor from the market through infringement suits." *See PRE*, 508 U.S. at 60 (discussing sham litigation); *see also Kaiser Found. Health Plan, Inc. v. Abbott Lab'ys, Inc.*, 552 F.3d 1033, 1045 (9th Cir. 2009) (citing *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965)). As applied to the patent context, a patentee who enforces or attempts to enforce her patent rights is protected by *Noerr-Pennington* immunity unless the alleged infringer can show that the patentee's conduct falls within the sham litigation or *Walker Process* exception. *See Glass Equip. Dev., Inc. v. Besten, Inc.,* 174 F.3d 1337, 1343 (Fed. Cir. 1999). The party seeking relief based on conduct otherwise protected by *Noerr-Pennington* immunity bears the burden of establishing that an exception applies. *See Gamble v. Kaiser Found. Health Plan, Inc*., 348 F. Supp. 3d 1003, 1028 (N.D. Cal. 2018) ("The Ninth Circuit has required a plaintiff seeking to establish the sham exception to *Noerr-Pennington* to plead around the defense with specificity." (citing *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988)).

Here, Plaintiffs base their Sherman Act and state law claims on the same set of allegations underpinning their declaratory judgment claims. The crux of Plaintiffs' argument is that Defendant's decision to report Plaintiffs' projectors as "infringing" to Amazon amounts to a baseless and improper "pre-suit assertion of patent infringement." Compl. ¶ 76; *see also id.* ¶¶ 64, 70. Because Plaintiffs' claims are based on Defendant's patent assertions, the Court must presume that the '142 Patent is valid and that Defendant's efforts to enforce it were in good faith. *See Atari Games Corp*., 897 F.2d at 1577. Accordingly, Defendant's conduct presumptively falls within the scope of *Noerr-Pennington* immunity. *See Sosa*, 437 F.3d at 925, 935, 942 (holding that communications between private parties fall under *Noerr-Pennington* protection if they are made "incidental" to litigation); *see also Glass Equip. Dev., Inc.*, 174 F.3d at 1343 (noting that "a patent owner who brings a lawsuit to enforce [his] statutory right . . . is exempt from the antitrust laws" unless one of two established exceptions to *Noerr-Pennington* immunity apply). In view of Plaintiffs' burden to plead facts that plausibly allege an applicable exception to *Noerr-Pennington*

immunity, the Court now addresses each of Plaintiffs' claims in turn. *See Gamble*, 348 F. Supp. 3d at 1028.

### 2. *Walker Process* Fraud and Sherman Act Violation

Plaintiffs first contend that Defendant's conduct falls within the *Walker Process* exception to *Noerr-Pennington* immunity and is thus actionable under Section 2 of the Sherman Act. To state a *Walker Process* claim, a plaintiff must first establish that the defendant "obtained the patent by knowing and willful fraud on the [U.S. Patent and Trademark Office ('PTO')] and maintained and enforced the patent with knowledge of the fraudulent procurement." *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016). A plaintiff must then plead facts "necessary to establish a Sherman Act" claim. *Id.*

Plaintiffs' claim falls short on several grounds. The Court addresses each below.

#### a. Failure to allege fraud

First, Plaintiffs fail to plausibly allege that Defendant obtained the '142 Patent by "knowing and willful fraud" on the PTO. To make such a showing, a plaintiff must at minimum establish that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009) (discussing the pleading standard for inequitable conduct); *see also Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007) (noting that a claimant seeking to demonstrate *Walker Process* fraud "must make higher threshold showings of both materiality and intent than are required to show inequitable conduct"). Here, Plaintiffs plead only that Defendant failed to disclose the "offer for sale" of the "Hitachi-branded CP-A100 model series of projectors" during the prosecution of the '142 Patent. Compl. ¶ 61. Plaintiffs do not plausibly allege materiality – that the '142 Patent would not have issued "but for" the purported misrepresentation – nor do they identify who allegedly defrauded the PTO and their specific intent to deceive. *See Kaiser Found. Health Plan Inc. v. Merck & Co. Inc.*, No. 21-cv-05497-HSG, 2025 WL 844415, at *12 (N.D. Cal. Mar. 18, 2025) (dismissing *Walker Process* claim for "failure to name any specific individual

United States District Court
Northern District of California

responsible for intentionally withholding material information from the PTO"); *see also Nalco Co. v. Turner Designs, Inc.,* No. 13-cv-02727 NC, 2014 WL 645365, at *7 (N.D. Cal. Feb. 19, 2014) (dismissing *Walker Process* claim because plaintiff failed to establish "that the patent would not have issued but for the misrepresentation or omission" (citation omitted)).

**b. Failure to allege monopolization or attempted monopolization**

Second, Plaintiffs fail to plausibly allege the remaining elements of a Sherman Act claim. Section 2 of the Sherman Act makes it unlawful to monopolize, or to attempt to monopolize, interstate or foreign commerce. 15 U.S.C. § 2. As an initial matter, it is unclear if Plaintiffs are asserting a claim for monopolization or attempted monopolization. However, Plaintiffs' claim fails under either theory because Plaintiffs have not sufficiently identified a relevant market. *See Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137-38 (9th Cir. 2022) (holding that a plaintiff must allege a relevant market to plausibly state a claim for monopolization); *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993) ("[D]emonstrating the dangerous probability of monopolization in an attempt case also requires inquiry into the relevant product and geographic market and the defendant's economic power in that market.").

"The relevant market is the field in which meaningful competition is said to exist." *Image Tech. Servs., Inc. v. Eastman Kodak Co*., 125 F.3d 1195, 1202 (9th Cir. 1997). A relevant market includes two components: a product market and a geographic market. *Hicks v. PGA Tour, Inc*., 897 F.3d 1109, 1120 (9th Cir. 2018). The relevant product market must include "the product at issue as well as all economic substitutes for the product." *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). Although a plaintiff "need not plead a relevant market with specificity, . . . a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Hicks*, 897 F.3d at 1120 (quoting *Newcal*, 513 F.3d at 1045).

Here, Plaintiffs do not plausibly allege either component of a relevant market. In fact, Plaintiffs do not allege any geographic market at all – an omission that alone warrants dismissal. *See Hicks*, 897 F.3d at 1120; *see also Killian Pest Control, Inc. v. HomeTeam Pest Defense, Inc*., No. 14-cv-05239-VC, 2015 WL 3766754, at *2 (N.D. Cal. June 16, 2015). As to a product

United States District Court
Northern District of California

market, Plaintiffs allege only that it is "the market for projectors." Compl. ¶ 65. Plaintiffs do not plead any facts that speak to the bounds or the contents of this proposed market, including whether all economic substitutes are included. *See Newcal,* 513 F.3d at 1045. Thus, Plaintiffs' vague and conclusory assertion of the relevant market is facially unsustainable. *See Hicks*, 897 F.3d at 1123.

Plaintiffs also fail to plausibly allege that Defendant has monopoly power or a dangerous probability of achieving it. Monopoly power is "the ability to raise price profitably by restricting output." *Ohio v. Am. Express Co.*, 585 U.S. 529, 549 (2018) (quoting Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles & Their Application ¶ 501). Monopoly power may be demonstrated through direct or indirect evidence. *FTC v. Ind. Fed'n of Dentists,* 476 U.S. 447, 460-61 (1986). Direct evidence of monopoly power requires allegations of "restricted output and supracompetitive prices." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012). Indirect evidence of monopoly power requires allegations that: (1) the defendant has a high share of the relevant market; (2) "new competitors face high market barriers to entry"; and (3) "current competitors lack the ability to expand their output to challenge [the] monopolist's high prices." *Image Tech. Servs.*, 125 F.3d at 1207-08; *see also Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995) (applying these requirements to a claim for attempted monopolization).

Here, Plaintiffs offer only that "[Defendant's] patent rights give [it] significant power" in the "market for projectors." *Id.* ¶ 65. But bare assertions that a defendant derives power from a patent are insufficient to plausibly allege monopoly power or a dangerous probability of achieving it. *See Ill. Tool Works Inc. v. Indep. Ink, Inc.,* 547 U.S. 28, 44 (2006) ("[A] patent does not necessarily confer market power upon the patentee."); *see also Rebel Oil*, 51 F.3d at 1441-42. The complaint does not include facts that speak to restricted output or supracompetitive prices in the projector market, nor does it address entry or expansion barriers for competitors. Moreover, the Court cannot plausibly infer that Defendant has a "high share of the relevant market" as defined by Plaintiff, because it is unclear whether Defendant has patent rights over a significant share of the projectors or projector-related components available for sale.

In sum, Plaintiffs fail to plausibly allege that Defendant's conduct (1) falls within the *Walker Process* exception to *Noerr-Pennington* immunity or (2) amounts to a violation of Section 2 of the Sherman Act. Accordingly, Defendant's motion to dismiss is GRANTED with respect to the *Walker Process* claim.

### 3. State Law Claims

Plaintiffs next seek relief under California and Washington law. More specifically, Plaintiffs allege that Defendant's conduct amounts to (1) tortious interference with prospective advantage under California common law and (2) statutory violations of Washington's Consumer Protection Act ("CPA") and Patent Troll Prevention Act ("PTPA"). *See* Compl., Prayer for Relief; *see also* Wash. Rev. Code. §§ 19.86, 19.350. As noted above, many courts have applied *Noerr-Pennington* immunity in the context of state law claims, including those at issue in this case. *See Theme Promotions, Inc. v. News Am. Mktg. FSI,* 546 F.3d 991, 1007 (9th Cir. 2008) (holding that the *Noerr-Pennington* doctrine applies to the plaintiff's California tortious interference with prospective economic advantage claim); *Umouyo v. Bank of Am., NA*, No. 2:22-cv-00704-JHC, 2023 WL 1433804, at *6 n.5 (W.D. Wash. Feb. 1, 2023) (collecting cases) ("Other judges in this district have applied *Noerr-Pennington* immunity to a [Washington CPA] claim."). The Ninth Circuit requires the party seeking relief based on conduct otherwise protected by *Noerr-Pennington* immunity to plead, "with specificity," that an exception applies. *Gamble*, 348 F. Supp. 3d at 1028 (citing *Boone*, 841 F.2d at 894). Accordingly, the Court first evaluates Plaintiffs' complaint with respect to the *Noerr-Pennington* exceptions before addressing the substantive elements of each of Plaintiffs' state laws claims.

#### a. Exceptions to *Noerr-Pennington* immunity

Plaintiffs have not plausibly alleged that Defendant's conduct falls outside of *Noerr-Pennington* protection. Plaintiffs first err by failing to identify the exception they are invoking in the context of their state law claims. *See* Opp. at 17 (contending that Defendant's actions fall outside *Noerr-Pennington* protection because they "are part of a general anticompetitive scheme"); *see also Or. Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991) ("Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr-Pennington*

United States District Court
Northern District of California

protection.”). To the extent that Plaintiffs intended to import their allegations of *Walker Process* fraud to the state law context, their pleading falls short for the reasons already discussed. *See supra* Section III.B.2.

Even if the Court assumes that Plaintiffs intended to invoke the sham litigation exception, Plaintiffs’ complaint remains insufficient. The Ninth Circuit applies a “a strict two-step analysis to assess whether a single action constitutes sham petitioning.” *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 810-11 (9th Cir. 1994) (“*POSCO*”). Plaintiffs must first establish that an action is “objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.” *Id.* at 810 (quoting *PRE*, 508 U.S. at 60). Plaintiffs must then establish that the objectively baseless lawsuit “conceal[s] an attempt to interfere directly with the business relationships of a competitor.” *Id.* “Only if the suit is found to be objectively baseless does the court proceed to examine the litigant’s subjective intent.” *Id.*

Based on Plaintiffs’ pleading, the Court cannot plausibly infer that Defendant’s efforts to assert the ’142 Patent rise to the level of objective baselessness. Plaintiffs’ contention that Defendant *knew* the ’142 Patent was invalid, unenforceable, and not infringed is insufficient because the ’142 Patent is presumptively valid and Defendant’s assertions are presumptively in good faith. *See Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*, 762 F.3d 1338, 1345 (Fed. Cir. 2014) (“Given the presumption of patent validity and the burden on the patent challenger to prove invalidity by clear and convincing evidence, it will be a rare case in which a patentee’s assertion of its patent in the face of a claim of invalidity will be so unreasonable as to support a claim that the patentee has engaged in sham litigation.”); *see also Realtek Semiconductor Corp. v. MediaTek, Inc.*, 769 F. Supp. 3d 1067, 1090 (N.D. Cal. 2025) (noting that “[t]he presumption of patent validity does not allow a court to take as true bare allegations that this issued patent is invalid” in the context of determining objective baselessness).

Plaintiffs also contend that Defendant was not properly assigned the rights to the ’142 Patent, and thus does not own it, to support a finding of objective baselessness. Compl. ¶¶ 70, 78. However, the validity of the assignment has been litigated in the Eastern District of Texas

litigation, where the Magistrate Judge recently issued a report and recommendation finding that the '142 Patent assignment was *not* invalid.[3] *See* Mot. Ex. 1 (Report and Recommendation at 21-26, *Maxell, Ltd. v. Coretronic Corp*., No. 5:24-cv-00088-RWS-JBB (E.D. Tex. June 24, 2026), ECF No. 223); Compl. ¶¶ 23-29 (establishing that the same patent assignment addressed in the R&R also included the '142 Patent). Although Plaintiffs may disagree with that ruling, the fact that Defendant survived the patent ownership challenge indicates that its claim to ownership of the '142 Patent is not "objectively baseless." *Cf. PRE*, 508 U.S. 49, 60 n.5 (1993) (noting that even when a defendant has "lost the underlying litigation, a court must resist the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation" (internal quotation marks and citation omitted)). Because Plaintiffs have not plausibly alleged that Defendant's efforts were objectively baseless, the Court need not reach the adequacy of Plaintiffs' pleading with respect to Defendant's subjective intent. *See POSCO*, 31 F.3d at 810.

Because Defendant's alleged conduct falls within the scope of *Noerr-Pennington* immunity, Plaintiffs' failure to plausibly allege a *Noerr-Pennington* exception precludes their state law claims. *See supra* Section III.B.1.; *see also Sosa*, 437 F.3d at 942 (affirming dismissal of claim because underlying conduct was protected under *Noerr-Pennington* immunity). However, because Plaintiffs will have the opportunity to amend their complaint and remediate the deficiencies just described, the Court also addresses the substantive elements of Plaintiffs' state law claims.

### b. California Tortious Interference Claim

Plaintiffs next allege that Defendant, under California law, has tortiously interfered with Plaintiffs' prospective economic advantage by "engag[ing] in wrongful conduct," including asserting the '142 Patent against [Plaintiffs'] projectors" despite "knowing" that the '142 Patent

[3] Judicial notice of the related proceedings is appropriate under these circumstances because the court's holding is an adjudicative fact that bears on whether Defendant's assertion of the '142 Patent is objectively baseless. *See* Fed. R. Evid. 201; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir. 2006); *UCP Int'l Co. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 981 (N.D. Cal. 2019).

was "invalid and unenforceable." Compl. ¶ 70. To state a claim for tortious interference with prospective economic advantage under California law, a plaintiff must allege "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Kor. Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (quoting *Westside Ctr. Assocs. v. Safeway Stores 23*, *Inc.*, 42 Cal. App. 4th 507, 521-22 (1996)). Plaintiffs must identify, at least in some manner, the third party with which its prospective economic relationship has been damaged. *See R Power Biofuels, LLC v. Chemex LLC,* No. 16-cv-00716-LHK, 2016 WL 6663002, at *16 (N.D. Cal. Nov. 11, 2016); *see also Westside Ctr. Assocs.*, 42 Cal. App. 4th at 527 (noting that the requirement "does not mean the party must [be] identified by name; it [i]s enough that the defendant was aware its actions would frustrate the legitimate expectations of a specific, albeit unnamed" party" (citation modified)). A plaintiff must also allege disruption of that relationship. *See 7EDU Impact Acad. Inc. v. You*, 760 F. Supp. 3d 981, 1001 (N.D. Cal. 2024) (finding allegations of "generalized disruption" insufficient); *see also Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1134 (9th Cir. 2015) (affirming dismissal of tortious interference claim because complaint did "not allege any specific resultant disruption to contractual or economic relationships").

Here, Plaintiffs plead only that Defendant acted with the intent to "disrupt the economic relationship" between Plaintiffs and their "current and potential customers." Compl. ¶ 71. This vague assertion is insufficient to state a tortious interference claim because it "fail[s] to adequately suggest that those relationships contain a probability of future economic benefits." *Ring Central, Inc. v. Nextiva, Inc.,* No. 19-cv-02626-NC, 2020 WL 4039322, at *5 (N.D. Cal. July 17, 2020); *see also Westside Ctr. Assocs.,* 42 Cal. App. 4th at 527 ("Without an existing relationship with an identifiable buyer, [a party's] expectation of a future sale was 'at most a hope for an economic relationship and a desire for future benefit.'" (quoting *Blank v. Kirwan*, 39 Cal. 3d 311, 331 (1985))).

Plaintiffs also fail to plead facts speaking to specific incidences of economic disruption. Indeed, Plaintiffs offer only that "[t]he economic relationship between [Plaintiffs] and its current and potential customers has been and is being disrupted by [Defendant's] conduct." Compl. ¶ 72. Such a conclusory statement cannot form the basis of a plausible tortious interference claim.[4] *See Infectolab Americas LLC v. ArminLabs GmbH*, No. 20-cv-03318-VKD, 2021 WL 292182, at *5-6 (N.D. Cal. Jan. 28, 2021) (dismissing tortious interference claim in part because the plaintiff's allegations of harm were "entirely conclusory").

In sum, Plaintiffs' pleading with respect to its California tortious interference claim is insufficient because Plaintiffs (1) did not plausibly allege an exception to *Noerr-Pennington* immunity and (2) failed to identify a specific economic relationship and describe how it has been harmed. Defendant's motion to dismiss is GRANTED.

**c. Washington Statutory Claim**

Plaintiffs allege that Defendant violated Washington's Consumer Protection Act ("CPA"), again by asserting the '142 Patent in "bad faith." *See* Compl. ¶¶ 78-81; Wash. Rev. Code. § 19.86. Plaintiffs seek to establish bad faith by alleging that Defendant violated Washington's Patent Troll Prevention Act ("PTPA"), which is a *per se* "unfair or deceptive act" for the purposes of the CPA. *See* Compl. ¶¶ 80-81; *see also Microsoft Corp. v. MediaPointe, Inc.*, 626 F. Supp. 3d 1129, 1137 (C.D. Cal. 2022) (noting that "a PTPA violation is a cognizable unfair method of competition for which Washington's [CPA] provides a private right of action" (discussing Wash. Rev. Code § 19.350.030)); *see also Valve Corp. v. Rothschild*, No. 23-cv-1016, 2024 WL 4335682, at *8 (W.D. Wash. Sep. 26, 2024) ("A violation of [the PTPA] is an 'unfair or deceptive act in trade or commerce and an unfair method of competition for purposes of applying [the CPA].'" (quoting Wash. Rev. Code § 19.350.030)).

---

[4] In their opposition brief, Plaintiffs contend that they identified SpaceBound as a current customer. Opp. at 20 n.5 (citing Compl. ¶¶ 10, 11, 35). The relationship between Plaintiffs and SpaceBound is not clear on the face of the complaint. In any event, Plaintiffs fail to allege that their relationship with SpaceBound was actually disrupted by Defendant's conduct.

**i. Lack of significant contacts with Washington**

As a threshold matter, Defendant contends that this claim should be dismissed because Plaintiffs offer "no basis" for invoking Washington law. Mot. at 23. An out-of-state plaintiff seeking relief under the CPA must establish that a defendant's conduct has "a significant contact with Washington." *See Cameron v. Country Mut. Ins. Co.,* No. 1:24-cv-03075-MKD, 2024 WL 4557671, at *8 (E.D. Wash. Oct. 23, 2024) (citing *Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wash. 2d 793, 804 (2015)). In their opposition brief, Plaintiffs point to their allegation that Defendant "made a pre-suit assertion of patent infringement in the State of Washington by sending the Reports to [Amazon]" and that the "only reasonable inference" is that Amazon operates in Washington. Opp. at 21 (citing Compl. ¶ 76). Plaintiffs also urge the Court to take judicial notice of the information posted on Amazon's website that "indicates that it is operated out of Washington." *Id.* at 21 n.6.

Beginning with Plaintiffs' request for judicial notice, the Court concludes that judicial notice of Amazon's website is inappropriate. In ruling on Rule 12(b)(6) motions, courts generally do not consider material outside the pleadings. *United States v. Corinthian Colls.,* 655 F.3d 984, 998 (9th Cir. 2011) (citation omitted). However, courts may consider facts in public records that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Plaintiffs' request is not up to par because "[t]he simple act of posting something publicly on the Internet is insufficient assurance of an exhibit's accuracy." *Thornton v. Mindvalley, Inc.*, No. 24-cv-00593, 2025 WL 877714, at *2 (N.D. Cal. Feb. 14, 2025) (quoting *Cappello v. Walmart Inc.*, No. 18-cv-06678-RS, 2019 WL 11687705, at *3 (N.D. Cal. Apr. 5, 2019)); *see also Harmoni Int'l Spice, Inc. v. Bai*, 2016 WL 6542731, at *23 (C.D. Cal. May 14, 2016) ("Although courts routinely take judicial notice of government documents and public records available from government websites, . . . courts do not routinely take judicial notice of document printouts from private, third-party websites." (citations omitted)). Accordingly, the Court denies Plaintiffs' request for judicial notice.

Turning now to Plaintiffs' alleged ties to Washington, the Court is not persuaded that

United States District Court
Northern District of California

Defendant's initiation of an APEX proceeding is sufficient. Plaintiffs do not allege that Defendant is a Washington corporation or was otherwise based in Washington when it initiated the proceeding, nor do they plead any facts indicating that Plaintiffs have been harmed in Washington. *See Cameron*, 2024 WL 4557671, at *8 (dismissing claim because non-Washington residents "who lack any significant contact or aggregation of contacts with Washington" would not have "a constitutionally permissible CPA claim"). Moreover, it is not clear that Washington law permits a non-resident plaintiff to pursue a CPA claim against a non-resident defendant. *See Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wash. 2d 793, 804 (2015) ("Under the CPA, an out-of-state plaintiff may bring a claim against a *Washington* corporate defendant for allegedly deceptive acts." (emphasis added)); *but see id.* at 803 ("The CPA does allow claims for an out-of-state plaintiff against all persons who engage in unfair or deceptive acts that directly or indirectly affect the people of Washington.").

The Court is skeptical that Plaintiffs can allege facts to cure these pleading deficiencies. However, because this is the first time that the Court has evaluated the sufficiency of Plaintiffs' allegations, the Court also addresses the substantive elements of Plaintiffs' claims.

**ii. Patent Troll Prevention Act ("PTPA")**

Under the PTPA, "a person may not make assertions of patent infringement in bad faith." Wash. Rev. Code § 19.350.020(1). To establish a PTPA violation, a plaintiff must describe the specific actions, taken by a defendant, that amount to bad faith. *Cf. Microsoft Corp.,* 626 F. Supp. 3d at 1137-38 (dismissing a PTPA claim because the plaintiff did not adequately demonstrate that the defendant "engaged in a form of prohibited activity"). The PTPA provides a non-exhaustive list of factors that "a court may consider" in determining bad faith. Wash. Rev. Code § 19.350.020(2).

Here, Plaintiffs allege that two of these factors weigh in favor of bad faith: Defendant "threaten[ed] legal action that cannot legally be taken" and "previously filed or threatened to file one or more lawsuits based on the same or substantially equivalent assertion of patent infringement." *See* Compl. ¶ 80 (citing Wash. Rev. Code §§ 19.350.020(2)(d); 19.350.020(2)(f)). Both allegations are insufficient. Plaintiffs' argument that Defendant threatened "action that

cannot legally be taken" is, once again, based on Plaintiffs' *belief* that the '142 Patent is invalid, unenforceable, and not infringed by Plaintiffs' projectors. *See id*. But believing that a legal conclusion is true does not make it so, and Defendant is entitled to enforce its patent. *See Concrete Unlimited Inc. v. Cementcraft, Inc.,* 776 F.2d 1537, 1539 (Fed. Cir. 1985) ("[A] patent owner has the right to . . . enforce its patent, and that includes threatening alleged infringers with suit." (citing 35 U.S.C. § 281)). Likewise, Plaintiffs' invocation of a separate matter currently pending between the parties in the Eastern District of Texas is unpersuasive. Under Section 19.350.020(2)(f), previous litigation is only relevant to bad faith if it is "based on the same or substantially equivalent assertion of patent infringement." Plaintiffs do not contend that the '142 Patent is being asserted in the Texas litigation; indeed, it appears that it is not. *See* Compl. ¶ 93, *Maxell, Ltd.,* No. 5:24-cv-00088-RWS-JBB (E.D. Tex. July 9, 2024). Section 19.350.020(2)(f) also only applies if a *court* found the previous assertion to be "without merit" or "false, misleading, or deceptive." Plaintiffs provide no evidence that such a finding exists.

Accordingly, Defendant's motion to dismiss is GRANTED with respect to Plaintiffs' PTPA claim.

**iii. Consumer Protection Act ("CPA")**

To plausibly allege a violation of the CPA, a plaintiff must establish "(1) an unfair or deceptive act or practice; (2) occurring within trade or business; (3) affecting the public interest; (4) injuring the plaintiff's business or property; and (5) a causal relationship between [defendant's] deceptive act and the resulting injury." *Haley v. Allstate Ins. Co.*, No. C09-1494 RSM, 2010 WL 4052935, at *7 (W.D. Wash. Oct. 13, 2010) (citing *Hangman Ridge Training Stables*, *Inc. v. Safeco Title Ins. Co*., 105 Wash. 2d 778, 780 (1986)). A plaintiff can adequately plead the first element by alleging that a defendant's conduct is a *per se* "unfair or deceptive act or practice." *Hangman Ridge Training Stables*, *Inc.*, 105 Wash. 2d at 785-86. A *per se* unfair trade practice exists when "a statute which has been declared by the [Washington] Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id.* Alternatively, a plaintiff may plead facts to establish that an act is unfair or deceptive. An unfair act is one that "(1) causes or is likely to cause substantial injury, which (2) consumers cannot avoid, and (3) is not 'outweighed by

United States District Court
Northern District of California

countervailing benefits.'" *Krefting v. Kaye-Smith Enters. Inc.,* No. 2:23-cv-220, 2023 WL 4846850, at *8 (W.D. Wash. July 28, 2023) (quoting *Merriman v. Am. Guar. & Liab. Ins. Co.*, 98 Wash. App. 594, 628 (2017)). A deceptive act is one that "has the capacity to deceive substantial portions of the public." *Klem v. Wash. Mut. Bank*, 176 Wash. 2d 771, 787 (2013).

Here, Plaintiffs contend that Defendant's conduct is a *per se* unfair trade practice because it violates the PTPA. Compl. ¶ 81. For the reasons already described, the Court concludes that Plaintiffs did not plausibly allege that Defendant's conduct violated the PTPA's prohibition on bad faith patent assertion. *See supra* III.B.3.c.ii. And because Plaintiffs' complaint lacks any assertions that would allow the Court to plausibly infer that Defendant's conduct unavoidably injures consumers or deceives the public, Plaintiffs' CPA claim is insufficient. *See Wick v. Twilio Inc*., No. C16-00914RSL, 2017 WL 2964855, at *6 (W.D. Wash. July 12, 2017) (dismissing a CPA claim because plaintiff failed to raise a plausible inference that defendant's conduct message was "somehow unfair or deceptive").

In sum, Plaintiffs' complaint is insufficient with respect to the Washington law claim because Plaintiffs failed to plausibly allege: (1) an exception to *Noerr-Pennington* immunity; (2) that Defendant's conduct is actionable under Washington law, and (3) that Defendant's conduct amounted to an "unfair or deceptive" act. Defendant's motion to dismiss is GRANTED.

**C. Leave to Amend**

The Court grants leave to amend because this is the Court's first ruling on the legal sufficiency of Plaintiffs' claims. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (holding that the "court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995))). Although the Court grants leave to amend, it may dismiss Plaintiffs' claims with prejudice if the amended complaint fails to plausibly state a claim. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding that failure to correct pleading deficiencies after dismissal is a "strong indication" that further amendment would be futile (internal quotation marks and citation omitted)); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave

to amend is 'particularly broad' where the plaintiff has previously amended." (citation omitted)).

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is DENIED as to the first claim for relief (declaratory judgment of non-infringement). As to the second claim for relief (declaratory judgment of invalidity), the motion is GRANTED with leave to amend as to Plaintiffs' indefiniteness (35 U.S.C. § 112(f)) theory, but is otherwise DENIED. Finally, the motion is GRANTED with leave to amend as to the third, fourth, fifth, and sixth claims for relief (patent misuse, *Walker Process* fraud, tortious interference, and violations of Washington law).

Within 21 days of this Order, Plaintiffs may file a second amended complaint to address the pleading deficiencies identified above.

**IT IS SO ORDERED.**

Dated: October 9, 2026

Eumi K. Lee
United States District Judge